The CAMBRIDGE COMPANIES, INC., Appellant,

v.

Carol WILLIAMS, Appellee.

No. 8732.

Court of Civil Appeals of Texas, Texarkana.

May 20, 1980.

Rehearing Denied June 24, 1980.

W. G. Pettey, III, William B. Finkelstein, Dallas, for appellant.

Corbet F. Bryant, Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellee.

RAY, Justice.

This is a suit on a note. Appellee (plaintiff), Carol Williams, brought suit against appellant (defendant), the Cambridge Companies, Inc., seeking recovery of a final installment of $6,000.00 allegedly due on a promissory note dated August 10, 1972. Trial was to the court without a jury and judgment was rendered in favor of Williams for $6,000.00 plus interest and attorney's fees. The trial court filed findings of fact and conclusions of law, but the court refused to make additional or amended findings of fact and conclusions of law requested by Cambridge. Cambridge submits thirty-two points of error for our consideration.

The judgment of the trial court will be reversed.

This is a complex case which has been well briefed by the attorneys for both sides. In January of 1972, Carol Williams, a licensed real estate saleswoman was working out of the office of Carrol Hicks, a licensed real estate broker. Mrs. Williams obtained a real estate listing on certain property owned by Mr. and Mrs. James E. Stockard and Mr. and Mrs. J. W. Stockard (the "Stockards") in early 1972. Mrs. Williams informed her husband, Neil Williams, an attorney, about the listing she had obtained from the Stockards and he contacted several potential purchasers including Cambridge. Neil Williams negotiated the transaction which resulted in the signing of a contract of sale dated April 15, 1972. The sales contract provided for a three percent commission to Carrol Hicks which he assigned to Carol Williams. Cambridge had agreed to split the full $60,000.00 commission with Carol Williams and her brokerage office. Cambridge's agent received his $30,000.00 at the closing on August 10, 1972. At the closing, Mrs. Williams received $6,000.00 of her $30,000.00 commission and got a promissory note from Cambridge payable to her in the amount of $24,000.00. The note provided for four principal payments in the amount of $6,000.00 each on August 10, 1973, through August 10, 1976. The note from Cambridge to Williams also provides the following:

"Reference is made to that certain note of even date herewith from the undersigned to J. W. Stockard and that certain note of even date herewith made by the undersigned and payable to J. E. Stockard, secured by deed of trust of even date herewith covering property purchased from the Stockards (the 'Property') pursuant to Contract of Sale dated April 15, 1972. The obligation of the maker hereunder to make payments of principal and interest hereon is conditioned upon the payments which are *simultaneously due* on the above-mentioned note being made by the maker hereof or its successor or assigns." (Emphasis added.)

The purchase money notes from Cambridge to the J. W. Stockards and to the James E. Stockards each provided that semi-annual *interest* payments would be made on January 1 and July 1 of each year beginning in 1973 through and including January 1, 1981, and that *principal* payments would commence on August 10, 1981 and be made each year thereafter on August 10 through and including August 10, 1985.

By comparing the Carol Williams note with the two Stockard notes, it can be seen that the Carol Williams note would have been paid in full on August 10, 1976, and that no simultaneous payments would have ever occurred with any payments to the Stockards. Therefore, in the absence of parol evidence, the simultaneous payment provision in the Carol Williams note would be meaningless since the first August 10 payment to the Stockards would not occur until August 10, 1981, five years after the

Carol Williams note should have been fully paid.

This case arose when Cambridge decided not to complete the transaction with the Stockards. On December 30, 1975, Cambridge notified the Stockards that it had elected to make no further interest payments on the Stockard notes and was willing to reconvey the property to them. No interest payments were made on either of the Stockard notes on January 1, 1976, or July 1, 1976. Likewise, Cambridge made no payment to Williams on the last installment due on August 10, 1976. Cambridge contends that since it made no interest payment on the Stockard notes it was not obligated to make any further payment to Williams. Cambridge states that the mistake that was made was in failing to conform the commission note payment date to the same date that it was to make July 1 interest payments on the Stockard notes. The true intention of the parties, as asserted by Cambridge, was that they intended to have the commission note payable on July 1, 1973, 1974, 1975 and 1976 simultaneously with July 1 payments of interest on the Stockard notes; and further conditioned that if no interest payments were made on the Stockard notes, then no payment would be due on the commission note. It is the mistake of having the commission note become due on August 10 rather than July 1 that Cambridge wants corrected.

■ As a general rule, parol evidence is admissible to reform a written instrument where there are allegations of a mutual mistake. *Continental Oil Company v. Doornbos*, 402 S.W.2d 879 (Tex.1966); *Ace Drug Marts, Inc. v. Sterling*, 502 S.W.2d 935 (Tex.Civ.App. Corpus Christi 1973, writ ref'd n. r. e.).

It is undisputed that Carol Williams and her husband knew about the mistake in the commission note. Neil Williams testified that he believed that Cambridge had drafted itself out of the contingency. The general rule is set out in *St. Paul Fire & Marine Ins. Co. v. Culwell*, 62 S.W.2d 100 (Tex.Com.App.1933, jdgmt. adopted), as follows:

"Equity has jurisdiction to reform written instruments in cases of mutual mistake, but a written contract will not be reformed in equity because of a mistake, in the absence of fraud, unless it is mutual; that is, common to both parties, and each under the same mistake as to its terms."

An important and accepted exception to this rule exists. In *Conn v. Hagan*, 93 Tex. 334, 55 S.W. 323 (1900), the Texas Supreme Court stated:

"Where there has been a mistake of one party, accompanied by fraud or other inequitable conduct of the remaining party, the instrument may be made to conform to the agreement or transaction entered into, according to the intention of the parties."

A further refinement of the exception may be found in *Warren v. Osborne*, 154 S.W.2d 944 (Tex.Civ.App. Texarkana 1941, writ ref'd w. o. m.), which held:

"*Knowledge* by one party of the other's mistake regarding the expression of the contract is equivalent to mutual mistake." (Emphasis added.)

The exception is also discussed in *Ace Drug Marts, Inc. v. Sterling*, supra. In *Ace Drug*, the lessor brought suit to reform a lease. Prior negotiations had established that the lessees would pay the utility bills. The lease was prepared by the lessor's attorney. However, the executed lease clearly provided that the lessor was to pay the utility bills. One of the principal shareholders of the lessee testified that he discovered the mistake in the lease but considered this as an offer by the lessor to pay the utilities. In affirming the trial court's judgment which permitted reformation, the court held:

"This conduct, of not mentioning the change, on the part of the appellants [lessees] was 'inequitable conduct' set forth in *Conn*, supra, or 'such inequitable conduct as to amount to fraud' as stated at page 946 of *Warren*, supra."

In the *Ace Drug* case, the jury had found that the lessees knew of the mistake in the

lease, and furthermore, that the lease failed to correctly set out the previous agreement of the parties.

In the present case, the trial court entered findings of fact and conclusions of law that there was no such "inequitable conduct" by Carol Williams or her husband justifying the reformation of the commission note. However, appellant Cambridge forcefully argues that it is entitled to have the note reformed as a matter of law. As the court held in *Ace Drug*, unilateral mistake by one party, and knowledge of said mistake by the other party (i. e. "inequitable conduct") is equivalent to mutual mistake.

In the instant case, it is uncontroverted that Neil Williams knew of Cambridge's mistake; that he conducted most of the negotiations with Cambridge for his wife; and that he engaged in such negotiations at the request and with the approval of his wife, the appellee. Carol Williams admitted that Neil Williams was acting as her agent and thus his knowledge of Cambridge's mistake would be imputed to her.

Based upon the holding in *Conn v. Hagan*, supra, and its progeny, we have concluded that the trial court erred in finding that Carol Williams and Neil Williams had not engaged in inequitable conduct. We hold that the conduct of Neil Williams in failing to mention the mistake in the commission note to Cambridge amounted to inequitable conduct as a matter of law.

The judgment of the trial court is reversed and judgment is here rendered that the commission note payable to Carol Williams by The Cambridge Companies, Inc. is reformed to reflect a July 1 due date rather than an August 10 due date and that Carol Williams take nothing against The Cambridge Companies, Inc. Further, all costs are taxed against the appellee.